# KANSAS DEPARTMENT OF CORRECTIONS

| | EL DORADO CORRECTIONAL FACILITY | SECTION NUMBER<br>09-133 | PAGE NUMBER<br>1 of 4 |
|---|---|---|---|
| Kansas Department of Corrections | **GENERAL ORDERS** | SECURITY AND CONTROL: Established Procedures for Use of the Restraint Chair | |
| **Approved By:**<br><br>*[signature]*<br>Warden | | Original Date Issued: | 04-27-1994 |
| | | Replaces Version Issued: | 07-22-2019 |
| | | CURRENT VERSION EFFECTIVE: | 05-27-2022 |

### POLICY

The SureGuard® Safety Restraint Chair shall be utilized as an emergency and temporary security restraint device for residents who are exhibiting destructive or violent behavior. The restraint chair shall be used in a humane manner, designed to avoid injury to residents and/or staff, while maintaining secure control of the resident. The restraint chair shall not be utilized in any manner as punishment. The ultimate goal is to remove the resident from the restraint chair in a safe and efficient manner when the resident's behavior is no longer destructive or violent.

### DEFINITIONS

None.

### PROCEDURES

I. **Authorization for Emergent Use of the Safety Restraint Chair**

   A. Residents may be placed in the safety restraint chair under conditions outlined within IMPP 12-113A.

      1. Should the resident demonstrate adequate self-control, an order for use of the safety restraint chair may be discontinued.

   B. The requesting officer (Special Security Team OIC, Response OIC, or the Incident Commander) shall obtain approval from the Shift Supervisor, with the specific circumstances for the use of the safety restraint chair, unless immediate use is required for the safety of the Resident or Staff at which point the supervisor will be notified at the first available point.

   C. The complete process shall be documented using the Use of Force Report (IMPP 12-111A, Attachment A) and shall include the specific circumstances warranting the use of the safety restraint chair and the facility staff member authorizing its use.

      1. The placement into the safety restraint chair shall be video recorded beginning as soon as possible, once the decision is made to utilize the chair.

      2. The video recording shall continue through the completion of placing the resident in a cell and/or removal from the safety restraint chair.



DEFENDANT'S EXHIBIT V

II. **Authorization for Planned Continued Use of the Safety Restraint Chair**

    A. When a resident placed in the restraint chair for emergent use cannot safely be removed from the restraint chair into a cell following emergency placement, continued placement may be necessary.

        1. Approval for the resident to remain in the restraint chair following emergent placement shall be requested by the Unit Team Manager or Shift Supervisor, to be granted by the Warden, Deputy Warden, or Chief of Security.

    B. On weekends or holidays, after receiving authorization to use the restraint chair, the Shift Supervisor shall notify the EDCF Duty Officer of the specific circumstances which led to the initial request for its use and for continued placement.

    C. The complete process shall be documented on the Use of Force Report (IMPP 12-111A, Attachment A) and shall include the specific circumstances warranting the use of the restraint chair, the facility staff member authorizing the use, and healthcare staff providing an assessment.

        1. Recording of the resident in the safety restraint chair shall continue through the process of the resident being removed from the safety restraint chair in accordance with IMPP 12-111A and 12-113A.

    D. Unless approved for continued restraint, the resident shall remain in the safety restraint chair no longer than eight (8) hours without the Warden's approval.

        1. Continued restraint for another eight (8) hours, up to a cumulative maximum of twenty-four (24) hours, can be authorized by the Warden, or a Deputy Warden, under conditions set forth herein.

III. **General Procedures for Use of the Safety Restraint Chair**

    A. Health care staff shall follow the assessment procedures set out in IMPP 12-113A and the additional procedures below.

        1. At any time, should housing unit staff identify poor circulation of a restrained limb, nursing staff shall be immediately notified to assess the resident's circulation.

        2. Range of motion releases shall be conducted every two hours, one limb at a time for no less than three minutes each.

            a. Should a chest, shoulder, or pelvic strap / restraint be used in the restraint process, these shall be released for the duration of the range of motion.

        3. Should the resident attempt to batter a staff member, or become combative in any way, the range of motion shall be immediately terminated.

            a. The resident's behavior shall be documented in the Observation Log and appropriate disciplinary report.

    B. The Use of Force report shall include the names of the health care and behavioral health staff completing the assessments.

    C. Correctional staff shall provide continuous observation of the resident placed in the safety restraint chair. This observation, as well as all contacts by health care and behavioral health staff with the resident shall be documented in the Observation/Chronological Log.

D. For the purposes of eating or drinking, one arm shall be released from the restraint.

1. Meals shall be a sack meal with finger foods in accordance with IMPP 12-113A.

2. A reasonable length of time shall be allowed for the resident to eat while the range of motion is conducted.

3. At least six (6) ounces of liquid shall be offered to the resident at least every two (2) hours unless medical staff approves a different frequency or amount.

E. The resident shall be released from the safety restraint chair and mechanical restraints shall be applied to allow the resident to use the toilet facilities within two (2) hours of administration of liquids.

1. The resident's behavior, positive and negative, shall be closely monitored and documented in the resident's observation logbook.

2. A verbal report regarding the resident's behavior shall be given to the Shift Supervisor after the resident has been secured in the chair.

3. The resident shall be allotted a reasonable length of time to use the toilet facilities.

4. If at any time the resident attempts to batter a staff member, destroy property, or becomes physically combative in any way, the resident will be re-restrained to the chair, regardless of length of time out of the safety restraint chair.

F. All toilet usage, meals, and drinks supplied shall be logged in the Observation/Chorological Log.

G. Staff assuming a post where a resident is being held in the safety restraint chair shall be notified of the type of restraints and the resident's condition, by the officer(s) leaving the post in accordance with IMPP 12-113A.

H. The safety restraint chair and any related equipment shall be inspected and cleaned after each use and at such other times as necessary to maintain fitness for service, but not less than once per year in accordance with IMPP 12-107D.

I. All staff involved in the initial placement of the resident into the restraint chair must be certified in the operations of the restraint chair and application of the restraints.

**NOTE: The General Orders set forth herein are intended to establish directives and guidelines for staff, residents, and those entities who are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees or residents, or an independent duty owed by the Department of Corrections to employees, residents, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by the facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this General Order are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This General Order is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.**

## REPORTS REQUIRED

| **Name/Type of Report** | **By Whom/To Whom** | **Due** |
|---|---|---|
| Incident and/or Use of Force Report | Requesting Staff/Shift Supervisor/Chief of Security | End of Shift |

## REFERENCES

IMPP 12-107D; 12-111A; 12-113A

## ATTACHMENTS

None.