IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY JEFFERSON,

    **Plaintiff,**

    v.                                                        CASE NO. 23-3263-JWL

LEONARD MOORE, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On January 3, 2024, the Court entered a Memorandum and Order (Doc. 5) ("M&O"), screening Plaintiff's Complaint and finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the Kansas Department of Corrections ("KDOC") officials to prepare and file a *Martinez* Report.

The M&O provided that "[o]nce the Report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 5, at 5.) The *Martinez* Report (Doc. 8) (the "Report") has now been filed. The Court's screening standards are set forth in the Court's M&O.

**I. Nature of the Matter before the Court**

Plaintiff alleges that he suffered from a medical condition on July 26, 2023. Plaintiff alleges that EDCF staff strapped him into a restraint chair with leg irons and with his hands

1

cuffed behind his back. (Doc. 1, at 2.) He claims that EDCF staff used excessive force by choking him until he became semi-unconscious and began spitting up blood. *Id*.

Plaintiff alleges that he filed an injury claim in August 2023, then met with UTM Martin and Major Moore regarding the claim. Plaintiff alleges that Moore agreed to settle Plaintiff's injury claim and they shook hands. *Id*. Plaintiff alleges that despite the agreement, on October 25, 2023, he received his claim back as denied. *Id*.

Plaintiff alleges deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment. He alleges that various defendants either participated in the use of excessive force or failed to intervene. Plaintiff names as defendants: Leonard Moore, EDCF Major; Austin Merz, EDCF SST Officer; Bryan Buchman, EDCF SST Officer; Trenton Burk, EDCF CO1 Officer; Orlando Perez, EDCF SST Officer; Clay Cooper, EDCF CO1 Officer; Sara Thatcher, EDCF CO1 Officer; Christopher Finch, EDCF CS1 Officer; and Centurion Nursing Staff. Plaintiff seeks $100,000 in monetary damages.

## II. The Report

The Report provides that Plaintiff's current KDOC incarceration began on June 16, 2004, after June 9, 2004 drug convictions in Harvey County case number 04CR24. (Doc. 8, at 2; Doc. 8–1.) Subsequent to his June 16, 2004 commitment, Plaintiff was convicted of Aggravated Battery in Reno County case 04CR203, Battery Against a Correctional Officer in Reno County case 05CR497 and Battery Against a Correctional Officer/Employee by a Person in Custody in Reno County case 19CR229. *Id*. Plaintiff's allegations are based on an incident occurring at EDCF, where he is currently housed.

The Report includes a Use of Force Report by Officer Daniel Romero and Narrative Reports by the following Officers who witnessed the incident: Orlando Perez; Austin Merz;

Bryan Buchman; Henry Hiesterman; Colt Wood; Sarah Thatcher; Curtis Grimmett; Clay Cooper; Trenton Burk; and Christopher Finch.  *Id*.

Romero states the reason for the Use of Force as:

> While working in A-Cell House as the OIC I responded to E-Cell house for an officer needs assistance offender trouble breathing. I arrived and saw Offender Jefferson #44578 screaming in the dayroom and displaying violent behavior. Offender Jefferson #44578 through (*sic*) himself on the floor and became combative. (Exhibit B)

(Doc. 8, at 3; Doc. 9, at 2.)

Romero describes the application of force as:

> Upon arrival COI Burk was attempting to gain control of Resident Jefferson #44578. Resident Jefferson #44578 threw his body weight on the ground of the E-1 dayroom. Once Resident Jefferson was on the ground, I pulled out my hand restraints at the same time gaining control of Resident Jefferson's #44578 left forearm. I placed my hand restraints on Resident Jefferson's #44578 left wrist. I grabbed resident Jefferson's right forearm and placed his wrist in the other side of the restraints making his wrist fully restrained. I double locked the hand restraints for safety purposes. After hand restraints were applied, due to Resident Jefferson's #44578 violent behavior, I gained control of Resident Jefferson #44578 legs by grabbing his calves and holding until leg restraints arrived. Once I took possession on (*sic*) leg restraints, I placed Resident Jefferson #44578 left ankle into the restrain and the right ankle immediately. (*sic*) Once the leg restraints applied (*sic*), I double locked the leg restraints. COII Buchman, COI Merz, COI Hiesterman and COI Perez arrived while COI Perez was recording with a camera. Once (*sic*) restraint chair arrived COI Merz, COI Heisterman, COII Buchman and Myself placed Resident Jefferson #44578 into the restraint chair. I put the lap belt on Resident Jefferson #44578 after I applied the Right shoulder strap and secured it while simultaneously COI Heisterman did the left shoulder strap. *Id.*

*Id*.; Doc. 9, at 2.

The Report provides that:

> The Narrative Reports of Perez, Buchman, Hiesterman, Burk,

3

> Thatcher, Grimmett, Cooper, Finch and Wood all described responding to a signal/call regarding a resident experiencing a medical issue. The reports describe Petitioner being restrained with leg and wrist restraints and being placed in a mobile restraint chair. The reports further describe Petitioner being transported to the trauma room where he was medically evaluated and cleared, strip searched and placed in an infirmary cell. (Exhibits C-K) Cooper describes Petitioner's behavior as "abnormal". (Exhibit I) Finch describes Petitioner's behavior as "non-compl[ia]nt". (Exhibit J) Wood's report describes Petitioner "screaming in the dayroom", that he "appeared to be foaming from the mouth" and that he "continued to scream" in the trauma room. (Exhibit K)
>
> Merz's report describes responding to a signal and bringing a restraint chair when responding. He describes that when he arrived, Jefferson had already been placed in wrist and leg restraints. Merz describes assisting with placing Jefferson into the restraint chair, maintain[ing] control of Jefferson's head and pushing the restraint chair to the trauma room. (Exhibit L)
>
> Merz denies choking Jefferson. (Exhibit M, ¶ 7) Merz denies Jefferson ever became "semi-unconscious", instead describes him as being awake and screaming continuously. *Id.* Merz acknowledges his hands were in the area around Jefferson's neck. *Id*. at ¶ 8. Merz describes using the hypoglossal nerve pressure point, consistent with his training (*see* Exhibit N), to perform his job duties and to safely transport Jefferson. *Id.* Pressure applied was to under Jefferson's jaw, not his throat. *Id.* at ¶ *9*.

*Id*. at 3–4.

The Report includes photos taken post use of force (Exhibit O), and facility videos of the incident (Exhibit V, filed conventionally). The Report states that "[t]he video is clear, although Merz's hands are in the area of Jefferson's neck and throat, Merz is not choking Jefferson." (Doc. 8, at 4.)

The Report sets forth the medical treatment Plaintiff received and states that:

> Centurion is the contracted provider of medical and dental services for KDOC facilities and performs its services under the State of Kansas Contract ID 48210. (Exhibit P, ¶ 3)
>
> On July 26, 2023 Petitioner is assessed immediately after arriving

4

> in the infirmary in the mobile restraint chair. Petitioner is described as screaming, crying, drooling, wide-eyed, and experiencing visual hallucinations. *Id.* at ¶12. Petitioner is admitted to the infirmary for a twenty-three hour observation due to an altered mental state. *Id.* On July 27, 2023 Jefferson provides a urine sample which is positive for e-coli. *Id.* at ¶ 15. It is unclear if Jefferson's back pain was related to e-coli. *Id.* Jefferson is later tested for a genitourinary infection, which is negative. *Id.* at ¶16. Centurion provides Jefferson with ongoing medical care related to complaints of back pain. *Id.* at ¶17-26.
>
> Jefferson's medical records from July 26, 2023 and the following weeks are included in this report. (Exhibit Q)

*Id*. at 4–5.

The KDOC's Internal Management Policy and Procedures ("IMPP") authorize reasonable force as required in the performance of duties, but prohibits unnecessary or excessive force. *Id*. at 5 (citing IMPP 12-111A; Exhibit S). The Report provides that "IMPP 12-113, *Use of Physical, Electrical, and Therapeutic [Restraints]* authorizes the use of restraints to prevent violence, including injury and property damage, [to] maintain custody and control, and during the transportation of the offender." *Id*. at 6; Exhibit T. "IMPP 12-113 authorizes the development of facility General Orders to provide procedures for the use of restraint chairs [and] EDCF adopted General Order 09-133, *Established Procedures for Use of the Restraint Chair*." *Id*.; Exhibit U.

The Report states that:

> It is unknown whether Plaintiff's behavior requiring the use of the mobile restraint chair to transport him on July 26, 2023 was due to a medical condition or drug use causing an altered mental state. Regardless of the cause, KDOC staff responded immediately to a medical emergency to assist Plaintiff. Plaintiff's behavior required the use of a mobile restraint chair to safely transport him to the trauma room and infirmary. Due to Plaintiff's noncompliance, the use of control tactics were necessary to restrain him into the chair to safely transport him. Video evidence clearly negates Plaintiff's claim that officers choked him until he was

5

> semi-unconscious and spitting up blood. Conversely, video shows him screaming the duration of his placement in the mobile restraint chair, his transport to the trauma room and his assessment by Centurion medical staff. It is highly plausible that Plaintiff did suffer from a sore throat in the days after July 26, 2023, not due to anyone choking him, but instead, from screaming for an extended period of time.
>
> Plaintiff's claim of cruel and unusual punishment inflicted during transport from the E cell house to the trauma room is without merit. Any force used during Plaintiff's transport to the trauma was in response to Plaintiff's non-compliant actions toward staff who were simply trying to get him medical attention. None of the named Plaintiffs, including Merz, acted maliciously to hurt Plaintiff. Any injury suffered by Plaintiff was a result of his noncompliance with KDOC and facility transport protocols.

*Id*. at 6–7.

### III. DISCUSSION

The use of excessive force is prohibited under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment"). "An excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Winter v. Mansfield*, 2022 WL 3652464, at *8 (10th Cir. 2022) (unpublished) (quoting *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quotations and brackets omitted)).

Under the subjective prong, a prison "official has a culpable state of mind if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Id*. (quoting *Redmond*, 882 F.3d at 936 (quotations omitted)). "Prison officials must balance the need to restore order and discipline against the risk

of injury to inmates if force is used, and they must often 'make their decisions in haste, under pressure, and frequently without the luxury of a second chance.' " *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quotations omitted)). In evaluating the subjective prong, relevant factors include "the extent of the inmate's injury, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.' " *Id*. (citing *Hudson*, 503 U.S. at 7 (quotations omitted)).

The Court has viewed the video of the incident involving the alleged use of excessive force. The video shows that Plaintiff appeared to be in pain, and was agitated, yelling, and foaming from the mouth. Plaintiff was also moving around and stiffening his body as they tried to secure him in the restraint chair. The video does not reflect that the officer choked Plaintiff until he became "semi-unconscious." Plaintiff continued to talk and yell while the officer applied pressure under his jaw until he was fully restrained in the chair. *See Winter*, 2022 WL 3652464, at *9 (finding that the officer's actions were reasonable and proportional where the officer briefly held the prisoner's "head under his chin for less than a minute, just long enough to allow other officers to secure the straps on the restraint chair").

The photos taken after the incident do not reflect any serious injuries, although they do show marks on Plaintiff's wrists, presumably from the handcuffs used while he was in the restraint chair. Although Plaintiff complained that the handcuffs were cutting off his circulation, medical staff checked the handcuffs while he was being assessed and indicated that they were "doing just fine."

Plaintiff was in the restraint chair during his transport to medical and until he was placed in a cell in the infirmary—less than 20 minutes total. Plaintiff was removed from the restraint

chair and his handcuffs were removed when he was placed in the infirmary for observation. The video does not reflect that Plaintiff was placed in the restraint chair for any reason other than to safely transport him to medical for assessment.

Plaintiff has failed to allege that any officer acted with a sufficiently culpable state of mind or used force maliciously and sadistically to cause harm, as opposed to in a good faith effort to maintain or restore discipline. Plaintiff has failed to show an Eighth Amendment violation based on an excessive use of force. Likewise, Plaintiff has failed to state a claim for failure to intervene. "[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable . . . ." *Id*. at *11 (citing *Est. of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (quotations omitted)). But "for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Id*. (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quotations omitted)). Because Plaintiff has failed to state a claim for the infliction of excessive force under the Eighth Amendment, he likewise fails to state a claim for failure to intervene.

Plaintiff is granted an opportunity to respond to the Report and to show good cause why his excessive force and failure to intervene claims should not be dismissed for failure to state a claim. The KDOC officials should allow Plaintiff an opportunity to view the video at Exhibit V for use in preparing his response.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff shall have until **May 6, 2024,** in which to respond to the Report at Doc. 8 and to show good cause why this matter should not be dismissed for the reasons set forth in this Memorandum and Order. Failure to respond by the deadline may result in dismissal of this action without further notice.

**IT IS SO ORDERED.**

**Dated April 4, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
