IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY JEFFERSON,

    **Plaintiff,**

    v.                                                                                   CASE NO. 23-3263-JWL

LEONARD MOORE, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On January 3, 2024, the Court entered a Memorandum and Order (Doc. 5) ("M&O"), screening Plaintiff's Complaint and finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the Kansas Department of Corrections ("KDOC") officials to prepare and file a *Martinez* Report.

The M&O provided that "[o]nce the Report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 5, at 5.) The *Martinez* Report (Doc. 8) (the "Report") was filed, and on April 4, 2024, the Court entered a Memorandum and Order (Doc. 13) ("M&O II"), granting Plaintiff an opportunity to show good cause why his excessive force and failure to intervene claims should not be dismissed for the reasons set forth in the M&O II. This matter is before the Court on Plaintiff's response (Docs. 24, 25, and 26.) The Court's screening standards are set forth in the Court's M&O.

1

**I. Nature of the Matter before the Court**

Plaintiff alleges that he suffered from a medical condition on July 26, 2023. Plaintiff alleges that EDCF staff strapped him into a restraint chair with leg irons and with his hands cuffed behind his back. (Doc. 1, at 2.) He claims that EDCF staff used excessive force by choking him until he became semi-unconscious and began spitting up blood. *Id*.

Plaintiff alleges that he filed an injury claim in August 2023, then met with UTM Martin and Major Moore regarding the claim. Plaintiff alleges that Moore agreed to settle Plaintiff's injury claim and they shook hands. *Id*. Plaintiff alleges that despite the agreement, on October 25, 2023, he received his claim back as denied. *Id*.

Plaintiff alleges deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment. He alleges that various defendants either participated in the use of excessive force or failed to intervene. Plaintiff names as defendants: Leonard Moore, EDCF Major; Austin Merz, EDCF SST Officer; Bryan Buchman, EDCF SST Officer; Trenton Burk, EDCF CO1 Officer; Orlando Perez, EDCF SST Officer; Clay Cooper, EDCF CO1 Officer; Sara Thatcher, EDCF CO1 Officer; Christopher Finch, EDCF CS1 Officer; and Centurion Nursing Staff. Plaintiff seeks $100,000 in monetary damages.

**II. DISCUSSION**

The use of excessive force is prohibited under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment"). "An excessive force claim has two elements: (1) an objective element requiring that the alleged wrongdoing be harmful enough to establish a constitutional violation; and (2) a subjective element requiring the plaintiff to show that the officials acted with a

sufficiently culpable state of mind. *Ezell v. Hininger*, 2024 WL 1109057, at *2 (10th Cir. 2024) (unpublished) (citing *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018)).

Under the subjective prong, a prison official's "state of mind is sufficiently culpable 'if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline.' " *Id*. (citing *Redmond*, 882 F.3d at 936 (internal quotation marks omitted)). "Prison officials must balance the need to restore order and discipline against the risk of injury to inmates if force is used, and they must often 'make their decisions in haste, under pressure, and frequently without the luxury of a second chance.' " *Winter v. Mansfield*, 2022 WL 3652464, at *8 (10th Cir. 2022) (unpublished) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quotations omitted)). In evaluating the subjective prong, relevant factors include "the extent of the inmate's injury, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.' " *Id*. (citing *Hudson*, 503 U.S. at 7 (quotations omitted)).

"[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable . . .." *Id*. at *11 (citing *Est. of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (quotations omitted)). But "for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Id*. (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quotations omitted)).

In his response, Plaintiff states that the response team arrived due to Plaintiff's request for medical assistance. (Doc. 24, at 5.) Plaintiff told CSI Finch that Plaintiff was having trouble with his lower back and kidney area and Finch called a medical code. *Id*. Plaintiff alleges that he clearly stated his medical condition when the code was called. *Id*. After the incident, an MRI

revealed that Plaintiff had two herniated discs that were pinching a nerve in his lower back.  *Id*. at 4–5.

Plaintiff claims that his body was stiffening during his placement in the restraint chair due to his body seizing up from the pain in his lower back caused by his medical issues.  *Id*. at 2.  Plaintiff claims that Officer Romero's statement about Plaintiff throwing himself on the floor "is untrue due to the fact that [Plaintiff] seized up and prior to [him] falling to the floor [he] grabbed [his] lower back area from the extreme pain."  *Id*. at 5.

Plaintiff states that his "behavior was due to [his] medical condition which was clearly stated when the code was called and EXPRESSED BY ME."  *Id*. at 6.  Plaintiff states that "[a]ll parties responding knew it was a medical condition, CSI Finch and CO1 Thatcher [have] had prior dealings with Plaintiff with the same medical issues."  *Id*. at 16.

Plaintiff also disputes Officer Romero's statement that he double-locked Plaintiff's handcuffs for safety purposes, and that he put the lap belt on Plaintiff.  (Doc. 25, at 5.)  Plaintiff states that CSI Grimmett placed the lap strap on Plaintiff and CO1 Heisterman was the one that double-locked the handcuffs and it was not done until after Plaintiff was in the trauma room.  *Id*.

Plaintiff states that there was no reason for SST Merz to apply the hypoglossal nerve pressure point after he was restrained in the chair and again in the trauma room, and that it was unnecessary for Officer Buchman to drop several knees to Plaintiff's thigh and hip area.  (Doc. 24, at 8); *see also* Doc. 25, at 7 ("SST Merz applied the hypoglossal to me when it was not necessary and [did] it incorrectly, when he used it to place me in the restraint chair and while I was fully restrained in the Trauma room.").

Plaintiff has also attached a grievance response from CO1 Thatcher acknowledging that he witnessed SST Merz "apply his fingers in Jefferson's throat underneath his jaw to the point

4

where blood was coming from his mouth. He was in [sic] restraint chair and restrained at this point." (Doc. 24–1, at 1.) Plaintiff also attaches a grievance response from CSI Finch that states that "SST used the pressure point underneath the jaw line pulling upward to gain compliance, Jefferson was not spitting or trying to do anything at the time he was strapped in and as far as I could see he was compliant." (Doc. 24–2, at 1.) Plaintiff claims that SST Merz applied the hypoglossal technique solely to hurt Plaintiff because Merz did this fully aware of Plaintiff's medical condition. *Id*. at 17. The Court has reviewed the video of the incident, and SST Merz does apply the hypoglossal nerve pressure point technique again in the trauma room while Plaintiff is fully restrained and being assessed by medical staff.

Based on Plaintiff's responses and the Court's review of the video, the Court finds that this case survives the Court's screening under 28 U.S.C. § 1915A. The Court will enter a separate service order for the KDOC defendants. The Clerk is directed to request waiver of service for Centurion employees in the manner requested by counsel for Centurion.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter survives the Court's screening under 28 U.S.C. § 1915A.

**IT IS SO ORDERED.**

**Dated July 11, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE