UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTHONY JEFFERSON,<br><br>　　　　　　　Plaintiff,<br>vs.<br><br>LEONARD MOORE, et al.<br><br>　　　　　　　Defendants. | Case No.  23-cv-03263-TC-GEB |

### AMENDED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST FINCH AND THATCHER

**Introduction**

Plaintiff's *pro se* § 1983 claim against two officers who did not apply any force to him but were in the vicinity when he was being strapped into a restraint chair should be dismissed because it does not allege facts that would constitute a claim against these two defendants. Even if it did, they are entitled to qualified immunity. Plaintiff's Count I claim is for violation of his Eighth Amendment rights and his Count II and III claims are for "deliberate indifference."

**Facts the Court Can Consider at this Time[1]**

Plaintiff's Complaint alleges that on July 26, 2023, he was "placed in a RESTRAINT CHAIR, fully restraint (sic) w/leg irons, cuffed behind [his] back and strapped in the chair and then he was "choked to the point [he] became semi-unconscious and started spitting up blood." Doc. 1 at 2.

Plaintiff's Complaint alleges that Defendant Thatcher "was on response and stood back and watched SST and others choke me, knee me and did not stop or step in to stop the excessive

---

[1] The facts alleged here come from the Complaint and Plaintiff's verified response to the *Martinez* report and the court's orders. Defendants Finch and Thatcher do not admit these facts for trial.

use of force." Doc. 1 at 3. He also alleges that she "responded to medical condition 7-26-23" and "was there to assist response." Doc. 1 at 4.

He alleges that Defendant Finch "was the cell house OIC who called the code and watched SST knee, choke and use excessive use of force w/out saying stop or stepping in to stop the abuse." Doc. 1 at 3. He alleges Defendant Finch "called the medical condition 7-26-23" and "watched the incident." Doc. 1 at 4.

He alleges that Thatcher "did not report the abuse to Adm., try and stop it or verbally say anything just stood silent while I was choked to the point of semi-unconsciousness, spit blood, kneed in my legs and side. Yet all staff have a moral obligation to speak out on abuse." Doc. 1-5, paragraph (6).

He alleges Finch "stood silent while I was choked, kneed, held down and choked semi-unconscious. He never reported this incident to Adm. He actually told me he wouldn't say anything unless Adm. ask, which they did not." Doc. 1 at 5, ¶ 7.

**Procedural History**

Plaintiff filed his original complaint with the allegations above against these two defendants on December 28, 2023. Doc. 1.  The Court ordered a *Martinez* report.  Doc. 8.

In the *Martinez* report, **neither Finch nor Thatcher were identified as having participated in the incident.** See Doc. 8 and its attachments.

After review of the report and its exhibits, including the video, the district court initially found that Plaintiff had "failed to state a claim for failure to intervene." Doc. 13 at 8. The Court's reference to the video says:

> The video shows that Plaintiff appeared to be in pain, and was agitated, yelling and foaming from the mouth. Plaintiff was also *moving around and stiffening his body as they tried to secure him in the restraint chair*. The video does not reflect that the officer choked Plaintiff until he became "semi-unconscious." Plaintiff continued to

talk and yell while the officer applied pressure under his jaw *until he was fully restrained* in the chair.

*Id*. at 7 (emphasis added). The Court issued a show cause order and ordered that Plaintiff have access to the video that the court had reviewed. *Id*. at 8.

Plaintiff responded to the *Martinez* report at Doc. 25. There, all he says about Defendant Finch is that he asked him to call medical help, which Finch did. *Id.* at 2. He then says that **during his placement in the restraint chair,** Buchman "came over and stated dropping knees on me from a standing position to my thigh and hip area." *Id*. at 3. He then says that when "**in the process of being placed in the restraint chair**," Merz applied "hypoglossal nerve pressure point." *Id.* He then complains about what Merz did in the trauma room. *Id*. He never alleges that either Thatcher or Finch were in the trauma room because they were not. See Doc. 8-9 (Ex. J) ("once resident Jefferson #44578 was placed in the restraint chair he was escorted out by response to the trauma room. I CSI Finch resumed my normal duties at ECH.").

In his response to the *Martinez* report, Plaintiff acknowledged "yes, my behavior was abnormal, yes my behavior could be looked at as noncompliant all this was due to my medical condition causing me to have involuntary movements." Doc. 25 at 6. He also said "Due to my medical condition and under the circumstances, I understand why the officers thought I was non-compliant, but once I was restrained in the chair for safe transport. (sic) There was no reason for Sgt. Merz to apply the hyplossal (sic) nerve pressure point." *Id*. at 7.

Plaintiff also relied on the video in his response, saying that "the video clearly shows plaintiff fully compliant when SST Buchman from a standing position starts dropping several knee's (sic) on plaintiff while COI Cooper and COI Burk held my legs which was also tethered to the restraint chair." *Id*. at 13. The video was Ex. V to the *Martinez* report.

3

In its reasons for allowing the case to go forward after the screening, the Court cited the application of the hypoglossal nerve pressure point by Merz "in the trauma room while Plaintiff is fully restrained and being assessed by medical staff." Doc. 27 at 5. **Neither Thatcher nor Finch were present in the trauma room.**

<u>Arguments and Authorities</u>

> **1.   Motions to Dismiss may consider uncontroverted portions of the *Martinez* report without converting the motion to one for summary judgment.**

As Judge Crabtree recently explained in *Bateast v. Orunsolu*, this Court may consider Plaintiff's response to the *Martinez* report in ruling on a motion to dismiss:

> Typically, when the court considers materials outside the pleadings, it must convert a Rule 12 motion into a summary judgment motion. Fed. R. Civ. P. 12(d). This restriction, however, does not apply to uncontested portions of a *Martinez* report. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("[I]n particular circumstances the *Martinez* report may be considered part of the pleadings for purposes of Fed. R. Civ. P. 12(b)."). "While a *Martinez* report cannot be used to resolve genuine factual disputes, it may, to the extent it is uncontroverted, support dismissal for failure to state a claim and for lack of exhaustion." *Williams v. Trammell*, 678 F. App'x 668, 669 n.1 (10th Cir. 2017) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1067-68, 1067 n.7 (10th Cir. 2009)("The *Martinez* report may not be used to resolve disputed factual issues. **However, an uncontroverted report may serve as the basis for a dismissal**."
>
> No. 22-3093-DDC-ADM, 2024 U.S. Dist. LEXIS 142823 at *12 (D.Kan. Aug. 12, 2024)

(emphasis added). Much of the *Martinez* report remained uncontroverted in Plaintiff's rebuttal.

> **2.   If the Court converts this to a summary judgment motion, the *Martinez* report and its attachments may be considered, as can documents on which Plaintiff relies in his response and video evidence**.

If Plaintiff in his response cites matters outside of the Complaint, the Court can convert this to a summary judgment motion. *Ray v. Bradford*, 612 Fed. Appx. 537, 539 (10th Cir., Aug. 14, 2015). It then can consider the *Martinez* report like an affidavit, not accepting the factual findings of the prison investigation if the plaintiff presents conflicting evidence. The plaintiff's

4

verified complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citations omitted).

Likewise, if this Court, at Plaintiff's urging, considers materials outside of the Complaint and converts this to a motion for summary judgment, it can consider whether "clear contrary video evidence" contradicts Plaintiff's allegations. *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021) (citations omitted).

### 3. Plaintiff fails to state a claim against Finch and Thatcher.

A *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Bellmon*, 935 F.2d at 1110 (citations omitted). "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff alleges that his Eighth Amendment rights were violated when Merz and Buchman used excessive force. "An excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Winter v. Mansfield*, No. 21-3171, 2022 U.S. App. LEXIS 23827, *23-24 (10th Cir. 2022) (quoting *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018)).

To satisfy the objective component, the plaintiff must show the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Ullery v. Bradley*, 949 F.3d

5

1282, 1290 (10th Cir. 2020) (quoting *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999)). But not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de *minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10. Conduct is repugnant to the conscience of mankind when it is "incompatible with evolving standards of decency" or involves "the unnecessary and wanton infliction of pain." *Id.* at 10 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)).

The question posed by the subjective prong of an excessive force claim is whether the defendant acted with a "sufficiently culpable state of mind." *Ullery*, 949 F.3d at 1290. (quotations omitted). A prison official has a culpable state of mind if he uses force "maliciously and sadistically for the very purpose of causing harm," rather than in a good faith effort to maintain or restore discipline. *Id*.

Plaintiff does not allege that Finch or Thatcher personally participated in the specific constitutional violation at issue, but it is not enough to just allege that they were present. *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("§ 1983 imposes liability for a defendant's own actions . . ."); *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation . . . must be established").

In order to state a claim against Thatcher and Finch for failure to intervene, Plaintiff must allege facts that demonstrate (1) that Bachman and/or Merz violated his constitutional rights; (2)

6

that Finch and/or Thatcher observed or had reason to know of the violation; and (3) that Finch and Thatcher had a realistic opportunity to intervene but failed to do so. *Merrill v. Fell*, No.23-7018, 2023 U.S. App. LEXIS 33862, *6 (10th Cir. Dec. 21, 2023) (citing *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022)).

Plaintiff acknowledges that he was non-compliant as he was being put in the restraint chair. He argues that his non-compliance was involuntary because of his medical issues, and that therefore the use of force as he wriggled around in the restraint chair was unreasonable. But this is not the law. In *Salway v. Norris*, No. 21-8055, 2023 U.S. App. LEXIS 2407 (10th Cir. January 31, 2023), the plaintiff alleged that because of pain caused by pressure on his obviously broken finger, he "began to kick and thrash" while being transferred to a gurney and that it was an excessive use of force for an officer to punch him. *Id* at *3. The court was not persuaded and said that even if the reason he was thrashing was because he was in pain, this did not necessarily make the use of force to subdue him unreasonable. *Id*. at *8, n. 4.

Plaintiff labels as unconstitutional only two incidents that occurred outside of the trauma room—Bachman's "dropping a knee" while Jefferson is *being placed in* the restraint chair (and so was not technically restrained), and Merz's application of the hypoglossal nerve pressure while Plaintiff was "in the process of being placed in the restraint chair." Doc. 25 at 3.

Neither Thatcher nor Finch violated Plaintiff's constitutional rights merely by being present. To state a claim against them for failure to intervene, Plaintiff must allege that these bystanders "had a realistic opportunity to intervene**.**" *Merrill*, No. 23-7018, 2023 U.S. App. LEXIS 33862 at *7. A reasonable opportunity would include having notice that the violation was about to occur so that the officer had the opportunity to stop it—two things the Complaint does not allege. For example, in *Merrill,* two cops pulled their tasers and one shot the suspect twice—once when

7

the suspect was standing on the porch and again 15 seconds later after the suspect was incapacitated. *Id*. at *3. The suspect alleged that the non-shooting cop should have intervened, but did not plead any facts to support that the non-shooting cop had notice that the second shot was going to occur. The court granted the motion to dismiss. *Id.* at *7.

In contrast, in *Mick by and through Mick v. Brewer*, the motion for summary judgment was denied because there was evidence that the citizen was handcuffed, dragged, and hit for several minutes while other law enforcement sat in the car and watched. 76 F.3d 1127, 1130-31 (10th Cir. 1996). *Mick* is distinguishable because Plaintiff's two allegations of unreasonable force when Finch and Thatcher were present—that Bachman dropped a knee and Merz used a hypoglossal hold—were brief and sudden and not repeated later in their presence. Plaintiff has acknowledged he was non-compliant as he was being put into the chair and that is when the two things he claims were unreasonable use of force occurred. He did not allege a prolonged event into which either Finch or Thatcher could have intervened.

Two officers discussed in *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) make clear that there must be allegations that an officer is present and knew of the behavior of another officer and had the chance to stop it before allegations are sufficient. In that case, the Tenth Circuit affirmed the district court's denial of qualified immunity on a failure to intervene claim of a supervisor who was present during the allegedly unconstitutional arrest, which lasted "between three and five minutes." *Id.* It reversed the denial of the motion of an officer who was "in the vicinity of the arrest" and held that the trial court should have granted him qualified immunity, as just being there was not sufficient to state a claim. *Id.* at 1165; *see also, O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (holding that the defendant officer had no duty to intervene when "three

blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them.").

### 4. Finch and Thatcher are qualifiedly immune from a claim by Plaintiff.

The Tenth Circuit heeds Supreme Court guidance to "resolv[e] immunity questions at the earliest possible stage in litigation." *Crane v. Utah Dep't of Corr.,* 15 F.4th 1296, 1302, n.6 (10th Cir. 2021) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Pearson v. Callahan*, 555 U.S. 223, 231, (2009) ("[T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to discovery.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, (1987))).

Because Finch and Thatcher move for dismissal of the § 1983 claims under Rule 12(b)(6) based on qualified immunity, there is "a presumption" that they are immune. *Bledsoe* at 606; s*ee also, Est. of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (same).

To overcome the presumption that Finch and Thatcher are immune, Jefferson must show (1) one or both of them violated a constitutional right, and (2) the constitutional right was clearly established at the time of their conduct, i.e. the contours of the right were sufficiently well developed that a reasonable official should have known his conduct was unlawful. Qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534 (1991)).

There are two issues about which the case law was not clearly established. First, when an inmate has admitted "my behavior was abnormal, yes my behavior could be looked at as noncompliant all this was due to my medical condition causing me to have involuntary movements," there is no clear case law that officers are required or expected to use a lowered level

of force to manage the non-compliant behavior. In fact, the Tenth Circuit has specifically held that this issue was unsettled, saying:

> It therefore makes no difference if, as [plaintiff] argues, a factual dispute remains about whether his additional movements were simply a reaction to pain from his broken finger rather than a continuation of his earlier resistance. Even if resolving that purported dispute in his favor would somehow establish a constitutional violation on the first qualified-immunity prong, it would not remedy his failure on the second prong to provide Supreme Court or Tenth Circuit precedent showing that such a constitutional violation was clearly established.

*Salway*, No. 21-8055, 2023 U.S. App. LEXIS 2407 at *8, n.4.

The second issue that is not clearly resolved in previous case law is whether Jefferson was sufficiently "restrained" so as not to warrant the use of force against him when he was stiffening up while officers were trying to secure him to a restraint chair. Jefferson admits that while the officers were putting him in the chair his "body became stiff." Doc. 25 at 3. He even admits that his "behavior could be looked at as non-compliant" when he had "involuntary movements." Doc. 25 at 6, c. He claims that during the time his body was stiff and he had involuntary movements, Buchman "started dropping knees" and that "in the process of being placed in the restraint chair," Merz applied the hypoglossal nerve pressure point.

Jefferson maintains he was restrained because his arms and legs were shackled but he was still being secured to the chair. He acknowledges and the video makes clear that he continued to move as the restraint chair straps were placed over his shoulders and secured behind him. Doc. 25-6. In *Winter,* the court noted that an inmate in a restraint chair who had his legs shackled and hands cuffed could still kick, so officers who used knee strikes so they could get him in the chair did not use excessive force. *Winter*, No. 21-3171, 2022 U.S. App. LEXIS 23827, at *8. Also, even though the inmate was partially secured to the restraint chair, an officer holding his chin so that *staff members could secure restraint straps*, was not using excessive force.

Jefferson claims he was already "restrained" when his legs were shackled and strapped to the chair and his hands were cuffed behind him, but case law suggests he was not "restrained" because he continued to squirm as the shoulder straps of the chair were completely secured. Jefferson himself states that Merz's application of the hypoglossal was "used…to place [Jefferson] in the restraint chair." Doc. 25 at 7, c. There is no law that makes it clear that forcing an inmate with hands in cuffs and feet in shackles whose stiffened and squirming body resists being completely secured to the chair is unconstitutional and requires intervention. Neither Finch nor Thatcher would have known that failing to intervene when the team that was placing Jefferson in the chair forced him to bend his body so that straps could be applied would be a constitutional violation. As Jefferson points out, officers securing him to the chair must be certified to do so, so Finch and Thatcher would not know when those officers were following or departing from their certification training and so would not know to intervene.

**Conclusion**

Jefferson fails to allege facts rather than conclusions that support a constitutional claim against Finch and Thatcher. Even if he did, the law is not so clear that their conduct was unconstitutional that it was clear to either of them that they should have been expected to intervene.

Respectfully submitted,

/s/
Gaye B. Tibbets, #13240
Jon E. Newman, #16612
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
E-mail: newman@hitefanning.com
*Attorneys for Defendants*
*Christopher Finch and Sarah Thatcher*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the ____ day of October 2024, the above and foregoing **Amended Memorandum in Support of Motion to Dismiss Claims Against Finch and Thatche**r was filed with the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and that a true and correct copy was mailed, postage prepaid and properly addressed to:

Anthony Jefferson #44578
Lansing Correctional Facility
P.O. Box 2
Lansing, KS  66043

/s/
Gaye B. Tibbets