**In the United States District Court
for the District of Kansas**

───────────

Case No. 23-cv-03263-TC

───────────

ANTHONY JEFFERSON,

*Plaintiff*

v.

LEONARD MOORE ET AL.,

*Defendants*

───────────

**MEMORANDUM AND ORDER**

Anthony Jefferson, proceeding pro se, sued several corrections officers and a private healthcare provider, claiming their response to his emergency medical condition violated his constitutional rights. Doc. 1; 42 U.S.C. § 1983. Two of the individual officers, Christopher Finch and Sara Thatcher, and the healthcare provider, Centurion, moved to dismiss. Docs. 46 & 50. For the following reasons, the defendants' motions are granted.

**I**

**A**

**1.** The defendants seek dismissal for failure to state a plausible claim under Federal Rule of Civil Procedure 12(b)(6). A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any

formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**2.** These rules do not operate in a vacuum. When a plaintiff, such as Jefferson, proceeds pro se, a court must construe his or her pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

And because Jefferson filed his lawsuit pro se while incarcerated, an additional pleading standard applies. Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993); *Routt v. Howry*, 835 F. App'x 379, 380 n.2 (10th Cir. 2020). But "[w]hen the pro se plaintiff is a prisoner, a court authorized investigation and report by prison officials (referred to as a *Martinez* Report) […] may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.

1991) (referring to a report prepared consistent with *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978)).

Usage of the information at the motion to dismiss stage depends on the plaintiff's allegations. Generally speaking, a district court reviewing a 12(b)(6) motion may not use a *Martinez* Report to refute facts pled by the plaintiff or otherwise resolve factual disputes. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Winkel v. Hammond*, 704 F. App'x 735 (10th Cir. 2017) (reversing a district court for dismissing a detainee's claim on a 12(b)(6) because it relied on contested facts from the *Martinez* Report). But a district court may use uncontroverted facts from a *Martinez* Report to dismiss a claim. *Gallagher v. Shelton*, 587 F.3d 1063, n.7 (10th Cir. 2009). A fact is uncontroverted if the plaintiff fails to provide information that would contest that particular fact. *Nickelberry v. Pharaoh*, 221 F.3d 1352 (10th Cir. 2000); *cf. Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* [R]eport are less specific or well-documented than those contained in the report.").

**B**

Plaintiff Anthony Jefferson is an inmate residing at El Dorado Correctional Facility in Butler County, Kansas. Doc. 1 at 1.[1] Jefferson brought this civil rights lawsuit against several corrections officers and a private healthcare contractor after he experienced a medical emergency at the prison in July 2023. *Id.* at 1–3.

On the day of the emergency, Jefferson was experiencing pain and had trouble breathing. Doc. 8-2; Doc. 8-3; *see also* Doc. 25 at 2. At some point, Jefferson fell to the floor of the dayroom in his cell block. Doc. 8-9; Doc. 25 at 2. Jefferson asked a corrections officer, Christopher Finch, for assistance. Doc. 8-9. Finch called in a medical code to alert other prison officials that additional assistance was needed in the dayroom. *Id.*

In response to Finch's call, other officers began arriving to help. One of the first to arrive was Daniel Romero. Doc. 8 at 3. When Romero arrived, he saw Jefferson "screaming in the dayroom and

---

[1] All citations are to the document and page number assigned in the CM/ECF system.

3

displaying violent behavior." *Id.* He also observed that another officer—Trenton Burk—"was attempting to gain control" of Jefferson. *Id.* Jefferson, who had stood back up, fell back onto the ground. *Id.*; *see also* Doc. 25 at 2. While Jefferson was on the ground, Romero applied hand restraints to Jefferson's wrists and double locked them "for safety purposes." Doc. 8 at 3. And because Jefferson was exhibiting violent behavior, Romero grabbed his legs and held them until another officer brought leg restraints. *Id.* When the leg restraints arrived, Romero put them on Jefferson's ankles and double locked those, too. *Id.*

The first alleged instance of excessive force happened while Jefferson was on the floor with his legs restrained. Doc. 1 at 4, ¶ 5; Doc. 25 at 3. At that time, one of the officers, Bryan Buchman, dropped from a standing position onto his knees so that he landed on Jefferson's thigh and hip area. Doc. 1 at 3–4. Jefferson also alleges that Buchman grabbed his throat. *Id.* at 4, ¶ 5.

Romero held Jefferson's legs until another officer, Austin Merz, arrived with a restraint chair. Doc. 8 at 4. Four officers, including the defendants Romero, Merz, and Buchman, participated in placing Jefferson into the restraint chair. *Id.* at 3. During that process, the second alleged instance of excessive force occurred. Doc. 1 at 2. Specifically, while the officers were placing Jefferson into the restraint chair, Jefferson's body "seized up from the pain in [his] lower back area and [his] body became stiff." Doc. 25 at 3. As a result, Merz applied a "hypoglossal nerve pressure point," which is a technique that involves placing pressure underneath an individual's jaw. Doc. 8 at 4. Merz has been trained to apply that technique. *Id.* Jefferson alleges that the pressure caused him to become semi-unconscious and start spitting up blood. Doc. 1 at 2; Doc. 25 at 3. Romero and another officer secured Jefferson into the chair with a lap belt and shoulder straps. Doc. 8 at 3.

That Jefferson was screaming and exhibiting violent behavior during this process is uncontested. Doc. 25 at 5–6; *Gallagher v. Shelton*, 587 F.3d 1063, 1067–68 (10th Cir. 2009) (noting that uncontroverted facts in a *Martinez* report may be relied on at the motion to dismiss stage). In particular, Jefferson concedes that his behavior was abnormal, non-compliant, and that he was screaming in the dayroom. Doc. 25 at 6 ("Yes my behavior was abnormal, yes my behavior could be looked at as non compliant."). Jefferson emphasizes, however, that his "behavior requiring the use of the mobile restraint chair was due to [his] two herniated disc[s]" in his lower back. *Id.* at 4.

4

In addition to the aforementioned officers, Jefferson states that other individuals were present in the dayroom during these events. For example, Finch—who initially called for assistance—was present and observed while the other officers restrained Jefferson. Doc. 1 at 5. Jefferson alleges that Finch watched other officers "knee, choke, and use excessive force without saying stop or stepping in to stop the abuse." *Id.* at 3. And he makes similar allegations against another corrections officer who was present, Sara Thatcher. *Id.* In particular, Jefferson states that Thatcher "was on response and stood back and watched" other officers use force against him but "did not stop or step in to stop the excessive use of force." *Id.*

Merz transported Jefferson to a trauma room. Doc. 8 at 4. Jefferson does not state which officers, if any, accompanied Merz, but he does not contest that Finch and Thatcher were only present during the in the dayroom and not any of the subsequent events. *See* Doc. 8-5 (describing Thatcher's involvement); Doc. 8-9 (describing Finch's involvement). In the trauma room, Jefferson was medically evaluated and strip searched. Doc. 8 at 3–5. Jefferson alleges that a third incident of excessive force happened while he was in the trauma room. *Id.* Specifically, Merz applied the hypoglossal pressure point again, this time while Jefferson was fully restrained. Doc. 1 at 4; Doc. 25 at 7. After he was medically cleared, Jefferson was admitted to the prison's infirmary for a twenty-three hour observation. Doc. 8 at 3–5. Jefferson arrived at the infirmary "screaming, crying, [and] wide-eyed." *Id.* at 5; Doc. 25 at 9. Jefferson agrees that he was exhibiting this behavior, asserting that "he was in extreme pain." Doc. 25 at 9.

After these events, Jefferson filed an injury claim with the prison. Doc. 1 at 2. Major Leonard Moore, who reviews uses of force at the prison, organized a meeting with Jefferson and other prison officials. *Id.* Jefferson alleges that they reached an agreement to settle his injury claim. *Id.* Nonetheless, Jefferson received a denial of his grievance shortly after he filed it. *Id.* Jefferson appealed the denial, Doc. 1-1 at 5, which was rejected, *id.* at 4. Jefferson further appealed that rejection, *id.* at 2–3, which was denied as well, *id.* at 1.

Jefferson then filed this lawsuit. Doc. 1. He sued several individual officers who were involved in restraining, transporting, or otherwise engaging with Jefferson during his medical emergency. *Id.* And he sued Centurion, the medical and dental service provider for corrections facilities in Kansas. Doc. 8 at 4. Jefferson's claim against Centurion stems from his allegations that an unnamed member of its nursing staff

5

violated his Eighth Amendment rights by failing to intervene in the officers' use of excessive force. Doc. 1 at 6. Jefferson seeks money damages for his pain, suffering, and emotional distress. *Id.* at 8. He alleges that he has panic attacks, shortness of breath, and fears that he will be killed if he has a medical issue in the future. *Id.* Three of the defendants—Centurion, Finch, and Thatcher—moved to dismiss.[2] Docs. 46 & 50.

## II

Jefferson failed to plausibly allege that Finch, Thatcher, or Centurion violated his constitutional rights. Accordingly, the defendants' motions to dismiss are granted.

### A

Invoking 42 U.S.C. § 1983, Jefferson alleges that Finch and Thatcher, along with several other corrections officers, violated his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1 at 6. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023).

---

[2] Jefferson had twenty-one days after the defendants' motions were served to file a response. *See* D. Kan. R. 6.1(d)(1). He failed to do so, and he did not request leave to file a response, either. Normally, such failure to respond leads to an uncontested motion like the defendants' motions to be granted. *See* D. Kan. R. 7.1(c). But the Tenth Circuit has held that "a district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response.'" *Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003) (quoting *Reed v. Bennet*, 312 F.3d 1190, 1194 (10th Cir. 2002)). Instead, it must "still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* at 1178. As such, Jefferson's Complaint is still examined for whether he has stated a claim upon which relief can be granted. *See id.*

The Tenth Circuit has held that there is "a need for careful attention to particulars, especially in [Section 1983] lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). This means plaintiffs are required to make it "clear exactly *who* is alleged to have done *what* to *whom*," as distinguished from collective allegations. *Id.* (citation and internal quotation marks omitted) (emphasis in original). That level of detail is necessary to satisfy the causation element of Section 1983 claim. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009); *see also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Foot v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). As such, "[a] plaintiff in a § 1983 action must allege that each defendant is subject to personal liability based on his [or her] own actions." *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024).

Personal participation, however, "is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). An officer may also be liable under Section 1983 for failing to intervene in an ongoing constitutional violation. *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011). In particular, a plaintiff may state a claim for a constitutional violation in the form of the defendant's failure to intervene by alleging that an "officer violated his constitutional rights," "a *different* government actor (the defendant) observed or had reasons to know about that constitutional violation," and "the defendant had a realistic opportunity intervene, but failed to do so." *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (emphasis added). But an officer may not be liable under a failure-to-intervene theory if no constitutional violation occurred in which he or she could have intervened. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)).

The focus of Jefferson's claims against Finch and Thatcher are limited to the acts and omissions occurring within the dayroom.[3] To state

---

[3] As noted, Jefferson does not contest that Finch and Thatcher were present in the dayroom but not in the trauma room, the infirmary, or during Jefferson's transport to any location outside of the dayroom. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067–68 (10th Cir. 2009) (relying on facts in the *Martinez* report that the defendant did not contest in his response to the report at the motion to dismiss stage).

a claim against Finch and Thatcher for a failure to intervene, Jefferson must have alleged that other officers used excessive force against him in violation of the Eighth Amendment while he was in the dayroom and that Finch and/or Thatcher failed to take reasonable steps to protect Jefferson from those violations. *See Mascorro*, 656 F.3d at 1204 n.5; *Estate of Booker v. Gomez*, 745 F.3d 405, 421–23 (10th Cir. 2014) (explaining that a defendant must be present during the alleged constitutional violation to be liable under a failure-to-intervene theory).

During Jefferson's time in the dayroom, he alleges that two discrete instances of excessive force occurred. First, Jefferson alleges that Bryan Buchman, a corrections officer, kneed him in the side and legs and grabbed his throat. Doc. 1 at 4. Second, Jefferson alleges that Austin Merz, also a corrections officer, unnecessarily applied the hypoglossal pressure point technique to gain control of Jefferson's neck while preparing him for transport to the trauma room. Doc. 1 at 2; *see also* Doc. 8 at 4.

Finch and Thatcher persuasively argue that Jefferson did not plausibly allege that Buchman and Merz violated his Eighth Amendment rights while Finch and Thatcher were present. Doc. 51 at 7. As a result, he has not plausibly alleged a failure-to-intervene claim against Finch and Thatcher. *See Jones*, 809 F.3d at 576 (reiterating that a failure-to-intervene theory of liability under Section 1983 requires an underlying constitutional violation).

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments." U.S. Const. amend. VIII. As part of this prohibition, prison officials "may not . . . use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). A two-step inquiry governs excessive force claims in the prison context. *Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020). The inquiry involves "an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and "a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). The subjective prong turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Ullery*, 949 F.3d at 1290; *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).

Jefferson did not plausibly allege that Finch and Thatcher observed other officers applying the type of force that amounts that would satisfy the Eighth Amendment's objective prong. Jefferson alleges that Finch and Thatcher failed to intervene when Buchman kneed him in his side and legs and grabbed his throat, and when Merz applied a technique involving putting pressure on his jaw and throat area. Doc. 1 at 2–4. Even assuming this conduct occurred, it is insufficient under Tenth Circuit precedent to suggest that the alleged wrongdoing was objectively harmful enough to rise to the level of a constitutional violation. *See Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (finding that an officer's use of force on a prisoner who declined to follow the officer's order to lay on his bed was not objectively serious enough to violate the Eighth Amendment where the officer "grabbed [the plaintiff] around the neck and went to twisting it and hurting it"); *see also Marshall v. Milyard*, 415 F. App'x 850, 853 (10th Cir. 2011) (describing uses of force that failed under the objective prong, including "bumping, grabbing, elbowing, and pushing a prisoner," "pushing cubicle-cell wall onto [the] prisoner's leg, causing bruises," and "a single blow to [the] prisoner's head while escorting him into prison"). That precludes failure-to-intervene liability with respect to Finch and Thatcher. *See Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1174–75 (10th Cir. 2020) (holding there was no failure-to-intervene liability where a pretrial detainee failed to allege force used by another officer amounted to a constitutional violation).

Nor did Jefferson plausibly allege that Finch and Thatcher observed or had reason to know that Buchman and Merz used force against Jefferson "maliciously and sadistically for the very purpose of causing harm." *Ullery*, 949 F.3d at 1290. Jefferson conceded that he was screaming and engaging in abnormal behavior. Doc. 25 at 6. Indeed, he even admits that he was acting in a non-compliant manner and that he could see how the officers who were attempting to restrain him could view his conduct as non-compliant. *Id.* And both instances of force that he alleges Finch and Thatcher observed occurred *while* the other officers were placing Jefferson in restraints and into the restraint chair. *Id.* Because Jefferson admits he was non-complaint and required a restraint chair, it cannot be said that the other officers applied force maliciously and sadistically for the very purpose of causing harm. *Miller v. Glanz*, 948 F.2d 1562, 1567 (10th Cir. 1991) (finding that a plaintiff's allegations were insufficient to meet the Eighth Amendment's subjective prong where the plaintiff conceded that he resisted instructions to place his hands behind his back and admitted that he wrestled with the

9

officer while the officer tried to move him to a holding cell); *Grissom v. Palm*, No. 19-3178, 2022 WL 3571410, at *6 (10th Cir. 2022) (noting that clearly established law did not prohibit an officer from using force to defend himself and regain control of a situation where a prisoner became violent while the officer was attempting to handcuff him for transit purposes). This precludes any attempt to impose liability against Finch and Thatcher under a failure-to-intervene theory.[4]

### B

Centurion, El Dorado's private healthcare contractor, also moved to dismiss. Doc. 46. Jefferson's claim against Centurion is similar to the ones he brought against Finch and Thatcher. Specifically, he alleges that an unnamed member of Centurion's nursing staff failed to intervene while officers applied excessive force. Doc. 1 at 6. Dismissal is warranted for at least two independent reasons.[5]

*First*, Jefferson failed to allege that the unnamed Centurion employee who was present during his medical incident acted pursuant to an official policy or custom. Doc. 47 at 13–14. A municipal entity may be held liable under 42 U.S.C. § 1983, but not by way of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (extending *Monell's* holding to private Section 1983 defendants acting under color of state law). Instead, a plaintiff seeking to impose liability on an entity acting under color of state law must establish that the harm-causing conduct was undertaken pursuant to an official policy or custom. *See Monell*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). The Tenth Circuit has "recognized as policies

---

[4] A defendant cannot be held liable under Section 1983 if he or she did not personally participate in the constitutional violation, either directly or by failing to intervene. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Because Finch and Thatcher did not observe a constitutional violation, it is unnecessary to address their arguments that qualified immunity provides another reason for dismissal. *See Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (only addressing the defendants' qualified immunity arguments on a failure-to-intervene theory of liability after determining there was an underlying constitutional violation).

[5] Centurion also argues that Jefferson failed to exhaust his administrative remedies. Doc. 47 at 4–11. It is unnecessary to address that argument in light of the conclusion that Jefferson failed to state a plausible claim for relief.

meeting this standard" those that "aris[e] from a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of . . . employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020).

Jefferson has not alleged that any of Centurion's policies or customs caused him to suffer a constitutional violation. He alleges that an unknown member of Centurion's nursing staff failed to intervene during an incident of excessive force. Doc. 1 at 3. But the Complaint contains no allegations that the unnamed nurse acted pursuant to an official custom, policy, or any other basis such that Centurion could be considered responsible for any unconstitutional conduct attributable to its employee. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (affirming the dismissal of a complaint against a prison's private healthcare provider where the plaintiff failed to allege non-conclusory facts that the entity enacted a policy or custom that caused a constitutional violation); *see also Alford v. Harrod*, No. 24-3022, 2024 WL 5118227, at *8 (D. Kan. Dec. 16, 2024) (dismissing a prisoner's claims against Centurion because the plaintiff failed to allege "a formal statement by the company or a persistent, well-settled practice of unconstitutional misconduct by employees").

*Second*, Jefferson's claim against Centurion fails because a medical professional cannot be held liable for failing to intervene in an altercation between a prisoner and law enforcement. That precludes imposing liability on the entity. *See Est. of Beauford v. Mesa Cnty., Colo*, 35 F.4th 1248, 1275 (10th Cir. 2022) (recognizing that a private medical facility could not be held liable under Section 1983 because none of its individual medical professionals committed an underlying constitutional violation). As noted, a law enforcement officer may be liable for violating an individual's constitutional rights if the officer is "present at the scene and . . . fails to take reasonable steps to protect the victim of another officer's use of excessive force." *Krueger v. Phillips*, __ F.4th __ (10th Cir. 2025) (quoting *Mascorro*, 656 F.3d at 1204 n.5); *see also Gruenwald v. Maddox*, 274 F. App'x 667, 674 (10th Cir. 2008) (applying this principle to corrections officers in the prison context). But the Tenth Circuit has not extended this duty to medical professionals in a correctional setting. *See Myers v. Turn Key Health Clinics, LLC*, No. 22-119, 2024 WL 4009660, at *6 (N.D. Okla. Aug. 30, 2024) (noting that Tenth

11

Circuit precedent does not suggest that "a nurse has an affirmative duty to interrupt officers who are engaged in restraining and securing an individual"). And courts that have directly confronted the issue of whether such an affirmative duty exists have held that medical professionals cannot be held liable for violating an inmate's constitutional rights by failing to intervene in an altercation between an inmate and law enforcement. *Drumm v. Valdez*, No. 16-3482, 2019 WL 7494443, at *7 (N.D. Tex. Jan. 6, 2020) (collecting cases).

That rule makes sense. A prison's ability to control its internal security, including dispelling in-the-moment confrontations with inmates, "is peculiarly a matter normally left to the discretion of prison administrators." *Whitley*, 475 U.S. at 321–22; *accord Redmond*, 882 F.3d at 938. Requiring medical professionals to intervene in these decisions regarding how much force is appropriate to restrain an inmate would contradict the necessary deference given to law enforcement officers' training and judgment in such situations. *See Est. of Beauford*, 35 F.4th 1248 at 1265 (recognizing that medical professionals and prison officials have different areas of expertise). Jefferson's claim against Centurion relies on the existence of such a duty, and as a result, his claim fails as a matter of law.

### III

For the foregoing reasons, Defendants' Motions to Dismiss, Docs. 46 & 50, are GRANTED.

It is so ordered.

Date: October 31, 2025        s/ Toby Crouse
                              Toby Crouse
                              United States District Judge

12